Sure. Good morning, Your Honors. May it please the Court. My name is Andrew Riley, and I'm the Assistant Attorney General for the State of Arizona, and I'm appearing on behalf of appellant respondents in this matter. The District Court erred in both components of its ruling below. To start with, the District Court's applicability question, the Court erred when it held that the State Court had unreasonably applied clearly established federal law by finding that Anders did not apply to Chavez's proceedings. That's not what the Court of Appeals held. The Court of Appeals held that one component of the Anders prophylactic framework was not required. So, Counsel, tell me what the best line or provision in the PCR court decision is where the Court most clearly held that Anders applied. Or if you want to point to more than one place, that's fine, but why don't you point out to me what you think is the most clear part of the Court of Appeals' opinion saying, we're applying Anders here? Well, I would point this Court's attention to—I apologize, I don't have the specific site in front of me—where the Court is citing to the State Supreme Court's previous decisions in State v. Smith and the Montgomery cases, where in those cases, the State's courts have acknowledged that you have the right to counsel on appeal of a guilty plea, which is essentially what Anders obviously is talking about, that you have that right, and it's just the limitation of it that those other cases talk about. You have the right to counsel. Counsel can't withdraw—be allowed to withdraw without some consideration by the court if the defendant offers a PCR petition, and then it must be considered on the merits. So I would point the Court to that, the citation to State v. Smith and the Montgomery cases, where they just acknowledge that you get everything but that independent review. So, counsel, let's say that we were of the view that the Court of Appeals' decision was ambiguous as to whether Anders applied, not that they said clearly that Anders applied, not that they said clearly that it didn't, but that it was ambiguous and it was hard to tell from the decision whether they were actually applying Anders or not. Does that affect your argument at all? I don't think so. I mean, to the extent it's ambiguous, I think there should be some deference given to the trial court, and I think we can also look to the Court of Appeals. I apologize. I wish it had been more clear, certainly. But all the parties below in front of that Court of Appeals agreed, including Tuamiki, that Anders applied. There's never been kind of, like I said, a question really about that. It's just whether or not that Anders-type review, which is really kind of a term of art when you're talking about Anders, you know, the Anders brief aspect, the requirements of counsel, and the Anders review aspect, the requirements of the Court. And it just said that one of the requirements of the Court is that they don't have to actively search the record in order to ensure that, to reasonably ensure that Mr. Chavez's appeal was resolved in a manner related to the merits of the appeal, which is really the appropriate. So, counsel, let's assume that we agreed with you. Why isn't the procedure in Arizona so close to the procedure rejected in Anders that even if the Court of Appeals purported to be applying Anders, that it was just an unreasonable application of federal law as determined by the United States Supreme Court because the procedures were so close? So close to the procedures that were specifically rejected in Anders? Sure. I mean, again, the procedures are prophylactic kind of suggestions, and I think the biggest part or the biggest point to be made is that Anders and Robbins and Penson, they all involve, you know, a defendant who went to trial and is maintaining innocence post-trial. And we can't deny the fact that pleas and, you know, defendants who plead guilty are not similarly situated to those that went to trial and are still asserting their, you know, still maintaining their innocence. So that would be my… Hold on, counsel. Go ahead. I am not sure that's true, and that's what I want to be educated about. It looks… I remember when Anders came down. At that time, as I recall well, there was no such thing as a sentence appeal. There was no such thing as a sentence appeal on the federal side, and at least in my state, and I think most or all states, there was no such thing as a sentence appeal. So if there was a guilty plea, there was really no possibility of it going anywhere except in an entirely separate habeas proceeding about ineffective assistance of counsel or something like that. However, once sentence appeals were created on the federal side in November of 87, as I recall, and most of the states followed shortly thereafter or slightly preceded that, as I remember. Once there was a sentence appeal, then there could be an appeal on the record without the need to develop evidence outside the original record, and it would relate to the sentence. It looks like Arizona said no appeal after a guilty plea, and it was probably an old rule, you tell me if I'm wrong on that, from before there was such a thing as sentence appeals. And once there's a sentence appeal, it looks like the post-conviction relief as of right, the first shot in Arizona, if it's regarding the validity and justification for the sentence, might be just like a direct appeal. So Andrew should apply in full. What am I missing? And I mean, respectfully, I am ill-prepared to answer the history of the states, and that's my failing here. But the right to appeal, if I'm mistaken, even guilty plea has been found in the Constitution, provided for by the state Constitution. And I know that they've just differentiated that. I don't know when the divergence occurred. I apologize for not going back that far. My concern is that the no appeal if there was a guilty plea rule in Arizona may have preceded the possibility of appealing the sentence, so there would be no reason to have a direct appeal if there was a guilty plea. I'm sorry, could you repeat that, Your Honor? I think there's no point in it. I was saying that there'd be no point to allowing an appeal, so it would be reasonable that Arizona didn't back when sentences were not appealable. I realize you're not familiar with that. Again, I apologize again. But I do think that the pleading defendant is not the same as a non-pleading defendant, and I think that's where also the mistake in the analysis lies, too. It's not a comparison between an indigent pleading defendant and an indigent non-pleading defendant. Why isn't he just the same if the only thing that's being appealed is the sentence? Because that's not the only thing that would potentially be appealed on a guilty plea. But it's severely limited and much more limited to than a non-pleading defendant. But they're just not similarly situated. They've admitted guilt. Counsel, I could see a reason why the type of counsel you would have in an Anders-type situation could differ, why it could logically differ if it were from a trial appeal as opposed to a guilty plea appeal. But are you aware of any U.S. Supreme Court case or even any published court of appeals case that has actually said the types of things counsel needs to do in an Anders situation, the kinds of procedures a state has to have, differ depending on whether it's an appeal from a verdict or an appeal from a guilty plea? Are you aware of any published federal appellate opinion which differentiates what the requirements are depending on whether it's an appeal from a trial or an appeal from a guilty plea? Not with that precise language, but I think Smith v. Robbins tells us that. So Smith v. Robbins identifies that there's all sorts of different procedures that could come to in different postures. And because of that, the Supreme Court affords a great deal of leniency in crafting. These are difficult questions to answer. So Robbins says, look, we give it to the state to figure it out and come before us. If there's a challenge, make it come before us in the first instance, not in a collateral proceeding. And part of your argument, I take it, is that given the latitude that Smith appeared to allow to states, it couldn't be that no fair-minded jurist could find Arizona's procedures complied with the Anders and Smith requirements. Yeah, with the great latitude that you get on that and in conjunction with the fact that we simply don't have a U.S. Supreme Court case that is considered, that I'm aware of anyway, the minimum procedures required for a pleading defendant. And it's not a side-by-side comparison. That's been clear. The real standard is whether the procedures reasonably ensure that the appeal was resolved in a manner related to the merit of that appeal. And the dissents in Smith v. Robbins identified it and, you know, agree that it's a new standard along with the majority in Smith v. Robbins. And there's just nothing that I've seen that suggests that Chavez's appeal wasn't resolved on the merits. In fact, it was. Help me with something else. I know that Arizona's rules have changed. And what I want to know is, will our decision in this case have any continuing effect or an effect on a large number of cases in Arizona? Or is this a one-time only on a pre-rule change issue? Well, Arizona's new rule doesn't provide for, to answer your Honor's question, no. Because it would continue to impact the cases because Arizona's new Rule 33 still doesn't require the kind of independent review by a new judge, by a different judge, trial judge, that is being requested or that's the claim to error. And again, it's important to note it's not just the Arizona Court of Appeals decision in Chavez that found that such a review wasn't required. The task force itself clearly found or didn't need, find the need to suggest that that should be included in the new procedure. So to the extent that they, you know, want, since the rule requires defense counsel to check their work and that aids, you know, the court, there's still not that, there's still not that independent review. And again, there's no Supreme Court case that says that that's kind of, or that has said that that's required to satisfy that minimum constitutional safeguard. All right, Mr. Robin, let me ask you this question. Let's put myself in the shoes of a fair-minded jurist, okay? I look at Arizona's procedure and there's no requirement that counsel submit a brief. Didn't Anders require a brief and didn't Smith also reference a brief? Reference a filing in which you explain what you looked at. Anders, what you reviewed in the record, Anders does talk about, you know, arguable issues. But as Smith v. Robbins notes, that Anders itself is contradictory. If you say that I can't find any non-frivolous issues, how can I, there's no arguable issues, there's no arguable issues. So how can I file a brief? We get Anders briefs all the time in the federal system. We get them all the time, but we get a brief. And sometimes when you first read them, you say, Jesus doesn't show much, but at least it identifies the question. It identifies the Fourth Amendment question. It identifies the Fifth Amendment question. And it articulates that here's the issue, here's the rule of law, here are the facts in this case, and there are no arguable non-frivolous issues that we can find. And it's a blueprint for us as a court to evaluate the level of, you know, intense work that counsel for the defendant may have followed. And that follows Anders. And that's the one piece that I see of the Arizona system that is a glaring omission. I don't know if I'm looking as a fair-minded jurist. Would any fair-minded jurist say, okay, in light of Anders, in the light of what the Supreme Court has said about the uniformity and treatment between appeals from guilty pleas and appeals from dispositions, that this is absent? So how do I get over that hurdle? You certainly are a fair-minded jurist, Judge, but I also think that's a fair point, and I also think the alternative is a fair point. Smith v. Robbins talks also about the McCoy case where the state required the, you know, almost required defense counsel to argue against his client. And that's kind of what we have here. Again, the claims available to a pleading defendant are so limited and limited to the, for the most part, the voluntariness of the plea and that. And so you can see why, you know, if counsel has to go up there and say, hey, you know, I interviewed him. He presented me with this claim that he didn't know what he was doing. I think it's bunkus. And then he puts it, you know, you're almost undermining the client. So it's just as reasonable to just have a blank slate so when the client files his PCR, it's not biased in any, you know, the potential judge reviewing that claim is not particularly biased. And that's something that is specifically talked about in Smith v. Robbins. Again, there's good reasons to have that procedure. And there's also arguable reasons not to have, not to require counsel to make certain arguments or certain proffers to the trial court. And I apologize, I've gone over. That's okay. That's okay, counsel. So you're answering Judge Fischer's question, and we'll hear from your friend now. Good morning. May it please the Court. Randy McDonald, CJA Counsel, on behalf of Petitioner Lino Chavez. In Andrews v. California, the Supreme Court held that counsel's bare assertion that there are no issues on appeal without more does not properly vindicate a defendant's right to counsel in his first of right appeal. But that's not what Arizona requires. Arizona requires counsel to determine whether there are any colorable claims. And that seems to me to be a different requirement than the California procedure that was rejected in Anders. So why couldn't a fair-minded jurist find that having to determine whether there are any colorable claims provides more safeguards to the defendant than were provided in Anders? So I think that there is sort of a tension between the non-frivolous versus the colorable claims argument, and that tension is discussed a little bit in Smith. In Arizona, and I think this speaks a little bit to Judge Fischer's question, in Arizona, the Anders brief in an appeal does not list arguable issues. There are some states, like the Wendy procedure in California that was at issue in Smith v. Robbins, that doesn't argue colorable issues or potentially colorable issues. It simply sets forth a factual and procedural history of the case with citations to the record. And so I think I may be misconstruing your question, though, Your Honor, as to the colorable claims. Are you referring to the notice of completion or the colorable claim that might be raised in a Rule 32? As I understand Arizona's procedures, the counsel has to determine whether there are any colorable claims, has to identify any issues that thus appear to be valid, and that that is not something that the Anders counsel had to do in California. And I'm not aware of any decision by the Supreme Court of the United States which suggests that that's not a material difference from the procedures in Anders. And we have Smith that talks about what we're looking for as a state procedure for an adequate and effective appellate review to indigent defendants. And we need to look to decisions of the United States Supreme Court. And so I don't see this colorable claim issue as the same as Anders. Why am I wrong? Well, in Smith v. Robbins, the court, my counsel points out that Smith v. Robbins does have that language that says there's no specific procedure required. Yes. But that the procedures must be at least as good as those in Anders. And to determine whether the Wendy procedure in Smith v. Robbins is at least as good as the procedure in Anders, Smith goes through sort of a list of things that previous Supreme Court decisions have held are required in an Anders-type review. And so Penson v. Ohio, for instance, sets the requirement that there be some kind of a brief, as Judge Fischer mentioned, in the federal system. I just don't see it in Smith as saying it's an absolute requirement. What I see as the holding of Smith is a state's procedure provides the appropriate review, quote, so long as it reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merit of the appeal and leaves significant latitude to the states. So I see Smith as saying we're not absolutely requiring particular procedures. We're going to be looking at whether this reasonably ensures that the appeal will be resolved in a way that is related to the merits of the appeal. And honestly, that strikes me as a pretty squishy kind of a standard when AEDPA requires no fair-minded jurist. And we have two things here in this case that aren't part of Anders, the colorable procedures and that counsel remains in an advisory capacity until the PCR court's final determination. And I just have a hard time getting to no fair-minded jurist could find that those survive post-Smith. So I guess I'm a little confused about what you mean by the colorable claim standard. Do you mean that when counsel reviews the record, they have to file some sort of notice that says I find no colorable claims, the notice of no colorable claim? My understanding is that in Arizona, that is the duty of counsel to determine whether there are any colorable claims. Yes. And that's what I am referring to. And so when counsel determines that there are no colorable claims, as in the procedure that happened in Anders, the only thing that counsel does is file a notice saying there are no colorable claims. Right. But in Anders, the colorable claims part wasn't the prequisite. It was a different prequisite. And so it's different than Anders. That here counsel's the baseline for counsel to be in this position is a determination of no colorable claims. And in Anders, as I understand Your Honor's question in Anders, it was that there were no frivolous claims. Yes. I don't know that the difference between the frivolous claim standard and the colorable claim standard is at issue here so much as how does the court evaluate whether that is in fact true? Well, I mean, it's at issue for me because the way I read Smith, this is an Arizona procedure, and if a fair-minded jurist could find that that's materially different than what was rejected in Anders, then I think that AEDPA would require us to defer to the Court of Appeals. So the way I read Anders is saying that in order to determine whether the claims were in fact frivolous, counsel was required to file some sort of brief that has come to be known as the Anders brief, that the bare assertion by counsel that there were no frivolous claims is not in itself enough. And I don't think that that is different. What did counsel have to do in Arizona? What did counsel have to do here in this case in Arizona? Correct. File a notice of no colorable claim, and that's found on 3ER, 315, and 316 in your… I remember it. And was there any obligation for counsel to identify any issues? No, and that is the same… Okay, and what did the court have to do, if anything, after receiving such a notice? Nothing. Tell counsel to stay on in an advisory capacity and… Tell me something else now. In view of the change in the rules in Arizona, will this case have continuing significance, or is it a one-time only case? I think opposing counsel in this case is correct in that as I read Rule 32, it does not require any independent review of the record by a reviewing judge. But it requires counsel to do more? It requires counsel to do more, yes. And so I would agree that the procedures in Rule 33 provide more protection than the previous procedures that were under… But you think they're still inadequate because the judge doesn't have to review the record? I could postulate that in a case that raised that question, that I would argue that. Right. You don't have to resolve that here. Right. My next question is one of the reasons that the Arizona Court of Appeals gave for its decision is that applying Anders to the Arizona post-conviction relief procedure would require the development of a new record, an additional record. My thought when I read that was, well, yes, if the claim in the post-conviction relief petition is ineffective assistance of counsel. No, if the claim in the post-conviction relief petition is in the nature of a sentence appeal. On this record, the sentence was inappropriate. We get many, many sentence appeals of that type after guilty pleas. Would the rules be different? Would Arizona's rule? Is Arizona's rule different? In those two different circumstances? So the Rule 32 and now Rule 33 procedure is a little bit odd because it is a hybrid. Well, the Rule 33 procedure, at least, is a hybrid of a direct appeal. And there are several Arizona cases and Summers v. Schriero from this circuit that say, for a pleading defendant in Arizona, a Rule 32 is the equivalent of a direct appeal. But it is also possible in a Rule 33 proceeding to raise issues that you would raise on a collateral appeal, such as, for instance, ineffective assistance of counsel. And I agree that if you were to raise that claim in a Rule 33 proceeding, there would need to be extra record investigation, and that that would probably not be covered by some kind of Anders review. I would think that would not be an Anders situation. Right. Now, in this one, I'm wondering which it is, because it looks as though Chavez's argument was that his lawyer wasn't diligent enough in developing mitigation. Right. And so the claim that he raised after his lawyer had told him that there were no issues was one of IAC. And I think that goes to the complication here that the Rule 32, 33 procedure is a hybrid of both a direct appeal and a collateral attack. The reason I'm asking you about it is I'm wondering, even if we think you're generally correct and that if it was an appeal, in effect, an appeal on the record, functionally an appeal on the record of the sentence, then we'd say it's not good enough under Anders. But in this case, the Court of Appeals' point about the need to develop a separate record would mean this isn't the functional equivalent of the first appeal at all. This is more like a subsequent post-conviction relief petition. So in this case, Anders wouldn't appeal, wouldn't apply, and Chavez is not entitled to any more than he got. Well, I would point to the Arizona cases like Montgomery v. Sheldon, like Wilson v. Ellis, and the others that say for a pleading defendant, a Rule 32 is the equivalent of a direct appeal. And I agree with you, the fact that you can raise additional non-direct appeal issues in a Rule 33 makes that determination slightly more complicated. But going – I'm sorry. Can – suppose that – can a defendant file the PCR as of right after pleading guilty or even not pleading guilty? Can he file the PCR as of right and then file a second PCR addressing ineffective assistance if he loses on the first one? I believe the answer to that is he can file a second addressing ineffective assistance of first appellate counsel. But if he does not raise ineffective assistance, I think that would have to be raised in the first PCR of right. But if you look at Rule 33 and if you look at the segment that I've excerpted in my brief at page 16, all of those issues go to the sentence and the plea, which would be issues that are appealable – well, a plea would not be appealable in a trial case, but the sentence certainly would. And the issues that are raised in Rule 33 that are to be part of this Anders-type brief under Rule 33  And so the Anders review that would occur in a Rule 33 proceeding would necessarily, under Rule 33, under the new rule, be limited to the sentence. And I think that's correct. I don't – I agree with Your Honor that it is complicated and it is difficult to do an Anders brief for an IAC claim. And I'm not suggesting that that is what we should do. But for those issues that can be raised in a direct appeal, a sentence appeal, as Your Honor has called it, then an Anders brief is appropriate and should be provided. Mr. McDonald, assume we think that Arizona's procedure was at least moderately better than that procedure rejected in Anders. Does the fact that the Supreme Court has never addressed a procedure exactly like this one mean that a fair-minded jurist could find this procedure adequate under Anders? So I would – excuse me. I would disagree that this procedure is not the same as Anders. I think that the difference that has been identified is the fact – well, for one thing, the fact that counsel is allowed to stay on in an advisory capacity. And the question at the district court was, what does that mean? What is an advisory counsel in an appellate situation? And I think the answer to that is found in Montgomery v. Sheldon where a similar situation occurred, and that's the state case. And the court said, although counsel did not formally withdraw for all practical purposes, his representation ended when he refused to submit a PCR petition. I'm sorry, what court said that? That was the Arizona Supreme Court in Montgomery v. Sheldon. Yeah, but going to Judge Fischer's question, here, counsel remains in an advisory capacity until the PCR court's final determination, and in that capacity remains available to the defendant and the PCR court to brief viable issues. There's no question that that wasn't part of the California procedure, right? It wasn't part of the California procedure, but I think in order to determine what exactly it is in Arizona and what that procedure is in Arizona, you have to look at the Arizona case law. And that Arizona case law says, basically, counsel doesn't do anything unless and until the court finds an arguable issue, and the reason that the counsel remains in an advisory capacity is to answer those arguable issues. Although, theoretically, the defendant could find a viable issue, too, not just the court. Correct. And I understand your argument that that's, in your view, not a material difference, but you concede that it is a difference. It is a difference, but I agree with your assessment of my argument that it is not a material difference. All right. Counsel, we've taken you with our questions over. If you have any final points, even though you're over time, please make them. I have no final points. I think we have addressed everything, and if you have any further questions, I'm happy to answer those. Okay. Thank you. Counsel for the State had exhausted his time, but we'll give you two minutes for rebuttal. Thank you, Your Honor. Just to go back, I mean, in the discussion, we were talking about the difficulty to even file an Anders brief in certain circumstances, and that difficulty is even made worse or made more difficult in the Anders-type review by the trial court. And so that's, you know, again, it just kind of highlights the tough questions that we have here and why that, you know, the Arizona Court of Appeals decision was reasonable and why the task force decision was also reasonable. They want greater protections. You know, I do agree that Rule 33 does provide some greater protections, but that doesn't mean that the rule that Chavez had at the time didn't meet the minimum safeguards. And just as a final point, the point that advisory counsel did remain on is extremely important, and extremely different, and, in fact, I think that's identified or showcased in Penson, in Justice O'Connor's concurrence in Penson, which says that even mere technical violations of Anders would be entitled to kind of a harmless error review. And there, in Penson, that was one of those things where they allowed the defendant or the defendant's attorney to completely withdraw and not do anything prior to this. But here, again, counsel wasn't worthless, remained at the ready. If anything was raised that was viable, could have been ordered to investigate. And, in fact, Chavez essentially received, you know, everything. The court acknowledged that it considered the record before it ruled on the merits of Mr. Chavez's PCR petition. There's been no indication that he was prevented from raising any claim whatsoever that he wanted or that any viable claim still exists. His sentence is legal, invalid, and there's no way to attack it. So under those circumstances, we would ask that this court reverse the district court decisions, unless there's any further questions from Your Honor. No, thank you. We thank both counsel for their helpful arguments, and the case just argued will be submitted. Thank you, Your Honor.
judges: KLEINFELD, Fisher, BENNETT